**Exhibits to Notice of Removal**

*Gloria A. Rose by her Guardian ad Litem Fred Rowe, and Fred Rowe*
*v. Bankers Life and Casualty Company*

# EXHIBIT 1

STATE OF ARIZONA
DEPT. OF INSURANCE

MAY 3 0 2007

TIME 10·12am
SERVICE OF PROCESS

Calvin C. Thur
State Bar No. 001237
**THUR & O'SULLIVAN, P.C.**
3800 N. Central Ave., Suite 810
Phoenix, AZ 85012
602-222-9888
FAX: 602-222-9889

Attorneys for Plaintiffs

## SUPERIOR COURT OF ARIZONA

## COUNTY OF MARICOPA

GLORIA A. ROWE  by her Guardian ad Litem
FRED ROWE, and FRED ROWE,

      Plaintiffs,

vs.

BANKERS LIFE AND CASUALTY
COMPANY, a foreign corporation; FALICIA M.
SOLLER, and JOHN DOES 1 through 2,

      Defendants.

CV2007-009455

**SUMMONS**

IF YOU WANT THE ADVICE OF A
LAWYER, YOU MAY WISH TO CONTACT
THE LAWYER REFERRAL SERVICE AT
602-257-4434 OR ON-LINE AT
WWW.LAWYERFINDERS.ORG. LRS IS
SPONSORED BY THE MARICOPA
COUNTY BAR ASSOCIATION

**THE STATE OF ARIZONA TO:**

BANKERS LIFE AND CASUALTY COMPANY

FALICIA M. SOLLER

    **YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time applicable, in this action, in this Court.  If served within Arizona, you shall appear and defend within **20** days after the service of this Summons and Complaint upon you, exclusive of the day of service.  If served outside of the State of Arizona - whether by direct service, registered or certified mail, or by publication - you shall appear and defend within **30** days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service.  Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be

1000summons                                         -1-

required to appear, answer or plead until the expiration of **40** days after date of such service upon the Director.  Service by registered or certified mail without the State of Arizona is complete **30** days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete **30** days after the date of first publication.  Direct service is complete when made.  Service upon the Arizona Motor Vehicle Superintendent is complete **30** days after filing the affidavit of compliance and return receipt or Officer's return. **RCP 4; A.R.S. §§ 20-222, 28-502, 28-503.**

**YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

**Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least 3 judicial days in advance of a scheduled court proceeding.**

**YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any answer or response upon the Plaintiff's attorney. **RCP 5, 10(d); A.R.S. § 12-311.**

The name and address of Plaintiff's attorney is:  Calvin C. Thur of THUR & O'SULLIVAN, 3800 N. Central Ave., Suite 810, Phoenix, Arizona, 85012  (602) 222-9888.

COPY

SIGNED AND SEALED THIS DATE: _____ MAY 25 2007 _____

**MICHAEL K. JEANES**
MICHAEL K. JEANES, CLERK
D.L. GARLE
DEPUTY CLERK
Clerk of the Superior Court

By_____



COPY

MAY 2 5 2007

MICHAEL K. JEANES, CLERK
O.L. GABLE
DEPUTY CLERK

1  Calvin C. Thur
   State Bar No. 001237
2  **THUR & O'SULLIVAN, P.C.**
3  3800 N. Central Ave., Suite 810
   Phoenix, AZ 85012
4  602-222-9888
   FAX: 602-222-9889
5
6  Attorneys for Plaintiffs

7              SUPERIOR COURT OF ARIZONA

8                 COUNTY OF MARICOPA

9  GLORIA A. ROWE  by her Guardian ad Litem        CV2007-009455
10 FRED ROWE, and FRED ROWE,                    Case No. _____

11            Plaintiffs,

12 vs.                                        **CERTIFICATE OF COMPULSORY**
                                                    **ARBITRATION**
13
   BANKERS LIFE AND CASUALTY
14 COMPANY, a foreign corporation; FALICIA M.
   SOLLER, and JOHN DOES 1 through 2,
15
16            Defendants.

17

18     The undersigned certifies that the largest award sought by the Plaintiff, including

19 punitive damages, but excluding interest, attorneys' fee, and costs **does** exceed limits set by

20 Local Rule for compulsory arbitration.   The case **is not** subject to the Uniform Rules of

   Procedures for Arbitration.

21     Dated  this _____ day of _____, 2007.

22

23                              **THUR & O'SULLIVAN, P.C.**

24

25                              By _____
                                    Calvin C. Thur
26                                  Attorney for Plaintiffs

1000CertArb



COPY

MAY 25 2007

MICHAEL K. JEANES, CLERK
O.L. GABLE
DEPUTY CLERK

Calvin C. Thur
State Bar No. 001237
**THUR & O'SULLIVAN, P.C.**
3800 N. Central Ave., Suite 810
Phoenix, AZ 85012
602-222-9888
FAX: 602-222-9889

Attorneys for Plaintiffs

## SUPERIOR COURT OF ARIZONA

## COUNTY OF MARICOPA

GLORIA A. ROWE  by her Guardian ad Litem
FRED ROWE, and FRED ROWE,

        Plaintiffs,

vs.

BANKERS LIFE AND CASUALTY
COMPANY, a foreign corporation; FALICIA M.
SOLLER, and JOHN DOES 1 through 2,

        Defendants.

CV2007-009455

**COMPLAINT**

**(Tort Non Motor Vehicle)**

## INTRODUCTION

What constitutes Long Term Care for an elderly insured with Alzheimer's disease? When you are Bankers Life and Casualty Company, the answer appears to be benefits for a short period of time or restricted to a small amount that will not even cover limited home health care for a year.  Although a United States Congressional Sub-Committee investigation in 1991 reported "*Abuses in the Sale of Long-Term Care Insurance to the Elderly*," such abuses in the insurance industry continue and were used on Gloria Rowe by Bankers Life.

Insurance was sold to Gloria Rowe as Long Term Care insurance by Bankers Life and Casualty Company's ("Bankers") agent and repeatedly referred to by Bankers as Long Term Care Coverage.   The policy specifically mentions coverage for Alzheimer's disease, an irreversible, long-term and care-intensive disease.    After Gloria was afflicted with Alzheimer's, Bankers signaled that the insurance benefits would stop in the near future, and when asked how the Long Term Care benefits would be stopping in less than a year – a Bankers' Vice President responded that it was not Long Term Care insurance.   Shortly thereafter, Bankers was still referring to it as "Long-Term Care" insurance, when it terminated the benefits in less than a year.  Bankers emphasized the importance of Long Term Care coverage in selling its insurance, but ignored the importance of such coverage to its elderly insured once that Long Term Care was needed.

Long Term Care insurance affords not only protection from financial ruin, but also provides emotional well-being and peace of mind to the elderly and their families. Although the fear of out-living one's income and becoming dependent may never be fully overcome, insureds should be able to feel secure in the knowledge that their Long Term Care coverage is there to provide for them if the need arises. In other words, having Long Term Care insurance means that growing old does not have to result in going broke, losing dignity or respect, or becoming a burden on your loved ones.

Bankers' sale of insurance as providing Long Term Care coverage, and then terminating benefits after a short period of time, was not the result of someone's mistake or a rogue adjuster.  Rather, it was a decision and strategy utilized with the blessing of its top

management.  Gloria Rowe, through her Guardian ad Litem, is asking that Bankers' promise of Long-Term Care coverage and her reasonable expectations be honored. Because Bankers' conduct was intentional, deceptive, and in conscious disregard of her rights and interests, this suit also seeks bad faith and punitive damages to prevent Bankers from selling insurance and/or adjusting claims in this manner in the future.

## GENERAL ALLEGATIONS

1.      Plaintiffs FRED and GLORIA A. ROWE (the "Rowes") are husband and wife and have been married for 52 years.  They are both residents of Pinal County, State of Arizona, and were at all relevant times herein.

2.      Defendant Bankers Life and Casualty Company ("Bankers") is a foreign corporation, licensed to do insurance business in the State of Arizona, and was conducting insurance business at all relevant times herein.  Bankers has caused acts to occur in Arizona out of which this Complaint arises.

3.      Defendant Falicia M. Soller ("Soller") is a licensed insurance agent authorized to sell insurance in the State of Arizona at the relevant times herein.  Defendant Soller has caused acts to occur in Arizona out of which this Complaint arises.

4.      John Does 1-2 are fictitious names of individuals, partnerships, associations and/or corporations whose true names or total involvement in this conduct are unknown to Plaintiffs at the time of the filing of this Complaint; and leave is requested to amend this

Complaint at a later time upon determination of their involvement or true names by Plaintiff. All of the foregoing described fictitious Defendants have committed wrongful acts and are either joint or concurrent tortfeasors with the specifically named Defendants, and are jointly and severally liable for the acts and omissions hereinafter complained of, or are otherwise secondarily liable for such actions and omissions.

5.     At all relevant times, Defendants Soller and John Does 1-2, and each of them, were the agents and employees of Defendant Bankers, and were at all times acting within the purpose and scope of said agency and employment, and Bankers has ratified and approved the acts of its agents and employees.

6.     In 2003, the Rowes were contacted and solicited by Defendant Soller, who convinced Plaintiff Gloria Rowe ("Gloria") to apply for a Bankers Life and Casualty policy that she represented would provide Gloria with "long term care" should it be needed for nursing home care or home health care.

7.     On May 29, 2003, Gloria applied for and obtained the Long Term Care policy from Bankers Life and Casualty Company.  At the time of application, Gloria was 77 years of age. The Application contained a questionnaire, which was accurately filled out, along with a medical authorization, and Bankers approved the Application.

8.     The Policy number was 203,046,017, with an issue date of May 29, 2003, and first renewal date of June 29, 2003.  The policy was countersigned by Falicia M. Soller as a "Licensed Resident Agent" of Bankers.

9.     Shortly after the sale, Gloria received a thank you letter from Ed Berube.

President and Chief Executive Officer of Bankers Life and Casualty Company in Chicago. The letter represented that: "For decades, Bankers Life has built its reputation by providing our customers with quality products, dependable service and prompt payment of claims." He also claimed that Bankers is "recognized as one of the most respected insurance companies in the United States and more than a million individuals across the country have chosen Bankers to help them protect and enhance their lifestyle and financial security."

10.    Gloria also received a form from Bankers entitled: "WHEN YOU NEED BENEFITS UNDER YOUR LONG TERM CARE / NURSING HOME / HOME HEALTH CARE COVERAGE."

11.    Plaintiffs paid all required premiums for the coverage, and continued to do so. The Policy was "Guaranteed Renewable."

12.    The Policy provided for an **Elimination Period of 20 Days of Service**, and defined "Elimination Period" to mean "the number of days a Family Member must receive services included under Part I or Part II Covered Expenses before benefits are payable.

13.    The Policy provided for a Maximum Daily Benefit amount of $150.00 for nursing home and assisted living facility care and a Maximum Weekly Benefit amount of $1,050 for Home Health Care and Adult Day Care.

14.    In December 2004, Gloria was suffering from confusion and inability to function adequately to perform some of the basic tasks of daily living and her doctor made an assessment of "Alzheimer's."  She became totally unable to care for herself in December, 2005, and home health care was started by Visiting Angels, a home health care provider.

1000complaint                                         -5-

15.     Since the time that she became incapacitated, Fred Rowe ("Fred") has acted as a guardian for Gloria, handling all her personal affairs. He is named as Guardian ad Litem for purposes of this suit.

16.     Mr. Rowe presented Gloria's claim to Bankers using a four-page claim form received from Bankers along with a cover page referring to benefits under LONG TERM CARE...coverage. The claim form gave instructions on how to "file a claim" and refers to "two different claim forms for LONG TERM CARE."

17.     On January 25, 2006, Gloria's physician, R. Christian Allen, M.D., completed Bankers' Physician's Claim Form, confirming Gloria's condition as Alzheimer's. Dr. Allen recommended Home Health care 6 hours per day, 7 days per week for her "lifetime."

18.     A claim was submitted on January 26, 2006 to Bankers for home care expenses incurred by Gloria for the initial periods of home care for six days per week, commencing December 30-31, 2005. The form from Visiting Angels stated that a license for a "non-medical home health care" provider did not apply in Arizona because Arizona does not license such providers.

19.     On February 22, 2006, Bankers denied the claim stating:

> "Your LONG TERM CARE insurance pays benefits for home health care when the services and supplies are provided by a home health care agency or a qualified home health care provider, as defined in your policy.

> "The information we received shows Visiting Angels is not a home health care agency or a qualified home health care provider."

20.     After additional multiple contacts were made with Bankers explaining that it was wrongfully denying the claims because there is no licensing requirement or procedure for

non-medical home health care providers in Arizona and therefore Visiting Angels cannot be licensed, it finally accepted the claim.

21.    On March 13, 2006, Bankers wrote regarding the December 2005-January 2006 expenses, stating that:

> "Your LONG TERM CARE insurance starts paying benefits after you have received 20 days of covered service.

22.    On March 24, 2006, Bankers wrote stating it was paying the covered expenses incurred after the 20-day elimination period was met and listed those covered expenses after day 20 that totaled $3,053.25, but its payment of policy benefits was only $2,341.75.  The balance of the $3053.25 was paid later on April 6, 2006.

23.    Payments made on March 24 and April 6, 2006, were made more than 30 days after appropriate proof of loss, but did not include interest as required by Arizona Revised Statutes § 20-462.

24.    Following an April 4, 2006 phone call by Mr. Rowe to Bankers asking about the elimination period and short payment on March 24, the Defendant wrote Gloria on April 5, 2006 concerning "questions about the **90** day elimination period on your policy."

25.    Alarmed by this letter from Bankers now claiming a 90-day elimination period, Mr. Rowe then contacted the local Bankers' office and spoke with someone, who indicated that he did not know anything about a 90-day elimination period, but that the policy was only good for 180 days.  Mr. Rowe felt the person he was talking to did not understand that Gloria had long term care coverage.

26.   On April 24, 2006, Bankers wrote Gloria advising that her insurance plan "includes an increased coverage benefit.  This automatic benefit increase helps keep up with the inflation of long term care expenses.  The added coverage provides for an increase to all Maximum Benefit amounts."  The letter advised that the "Maximum Benefit Per Any One Period of Expense" was now "$31,320.00," and that the Lifetime Maximum Benefit Amount was "UNLIMITED," and the "Remaining Lifetime maximum Benefit Amount Available" was "UNLIMITED."

27.   On April 26, 2006, after receiving Bankers' letter, Mr. Rowe called Bankers and left a message inquiring about the benefit increases.  On April 28, 2006, Mr. Rowe received a call from an agent in Bankers' local office named "David," who told Mr. Rowe that the benefits stop in 180 days, and that if Mr. Rowe had a problem with that or needed some money, "I have a friend who can get you a reverse mortgage."  Since the local agent's remarks about coverage conflicted with long-term care and the April 24th letter, Mr. Rowe felt David did not know what policy was involved or was trying to get him involved in some type of deal on a reverse mortgage.

28.   On April 28, 2006 Gloria received a billing notice from Bankers setting forth a premium due date of 5/29/06 and indicating that she could save on premium by paying for a full year or a half year, or quarter rather than by the month and it talked about the "security" provided by "knowing your Bankers protection is standing by."  Based on the representations in the April 24th letter and the billing notice. Mr. Rowe paid a full year's premium for Gloria's insurance.

29.     On June 28, 2006, Bankers wrote Gloria enclosing a check for June 3 through 9 and stated: "this correspondence is not an admission of liability. In order to verify continued benefit and eligibility, we are obtaining additional information from your provider." The letter was confusing since Alzheimer's was the reason for the home health care that was being provided and Alzheimer's is not a condition from which Gloria would recover or improve.

30.     On October 10, 2006, Bankers again wrote Gloria stating "your LONG TERM CARE insurance does not pay for losses due to services and supplies not included in the plan of care." The letter was confusing and upsetting to Fred and Gloria Rowe, and the Visiting Angel who was caring for Gloria wrote to the Bankers Life Claim Department on October 14, 2006 stating that Visiting Angels is not charging for supplies or services not included in the plan of care because it was providing six days of service, six hours per day, not seven days a week. The letter then complained about Bankers being behind in payments and asked, "What's to review? Nothing has changed. Why the letter of review. Please explain in writing if there is a problem."

31.     Bankers Life wrote on October 20, 2006 enclosing a check for dates of care in September and stating: "we do wish to remind you that you will soon reach the maximum claim amount that we can pay on your LONG TERM CARE insurance." The letter then refers to "LONG TERM CARE" insurance not paying for losses due to services and supplies not included in the plan of care. Mr. Rowe then wrote Bankers asking about what is being reviewed as mentioned in recent letters and that "goods and services" being unpaid is puzzling since nothing had changed since the claim was first filed. Mr. Rowe also questioned

Bankers' recent statement that benefits would terminate shortly because "we have reached some limit of coverage. . .," and he told Bankers that the policy was bought in good faith and termed "Long Term," and the claim had started less than a year earlier.

32.    On November 20, 2006, Mr. Rowe received a letter from K. Smith, Second Vice President, Customer Service at Bankers.  Mr. Smith stated that the policy "is not a Long Term Care...it is a Limited Benefit Convalescent Care Policy."  Vice President Smith then states that he is providing a policy summary which is five pages long and the summary states in a couple of places that "you may renew this policy for life as long as you pay premiums on time."  Mr. Rowe was totally confused.

33.    The confusion escalated when two days later Bankers sent a letter to Gloria stating: "we do wish to remind you that you will soon reach the maximum claim amount that we can pay on your LONG TERM CARE insurance...we wish you a Happy Holiday Season."  Two weeks later Gloria received another letter from Bankers dated December 7, 2006 enclosing a check for home health care services through December 1, 2006 and stating that "your LONG TERM CARE policy pays home health care for $29,767.50 expense.  We have now paid this benefit.  Therefore, this is the last benefit check for your home health care expense."  The letter then had some conflicting information talking about receiving services on a permanent basis and renewing coverage by "simply" paying the premium, but at the same time saying that the policy has paid maximum benefits and therefore cannot pay additional benefits.

34.    Fred was confused by the December 7, 2006 letter and therefore called Bankers'

Home Office Policy Benefits Department in late December and read the letter to a person who identified himself as "Andre." Andre pulled up the records and said that the letter saying Gloria had maxed out her coverage and that no benefits were available now, was "incorrect," and that they should continue as usual. Andre then said that everything was okay, that he had reviewed the policy and it is "Long Term if premiums are paid," and that the next premium was due 05/29/2007.

35.    In that December 2006 phone conversation, Andre also told Fred that "it would appear we have not adequately paid billings to date." Fred asked Andre to confirm what he had just stated in writing. Gloria never did get a letter from Andre. Instead, in early January 2007, Bankers' Vice President of Customer Service, K. Smith, wrote Gloria referring to the phone call and stating, "The maximum payable under this policy is $29,767.50. This maximum was met as of November 28, 2006, so no additional benefits were payable. I wish we could help more, but please understand we can only pay what the insurance permits."

36.    Confused by Bankers' termination and then denial of benefits, with Bankers' staff stating Gloria has long-term care coverage and benefits are still due, while upper management deniers further benefits and claims it is not Long-Term care insurance, Mr. Rowe called Bankers to inquire about what had happened and what the Long-Term Care coverage was about. In response, Gloria again received a letter from Vice President Smith dated February 23, 2007, stating: "your policy will qualify for restoration of benefits if you have not received treatment for any covered service listed in the policy for six months in a row. Provided you've kept the policy in force benefits may be restored." The Vice

President's letter did not explain or disclose that since the "one Period of Expense" had ended, that a new "Period of Expense" would commence with a new 20-day elimination period before benefits would be paid.

37.    Bankers has failed to pay any benefits since December 1, 2006.

38.    Plaintiff's experience with Bankers has been replete with deception, misrepresentation and inconsistent statements by the company's agents, claim representatives and vice president to the point of causing total confusion, stress, worry, frustration and despair. The Bankers Resident Agent, Falicia Soller sold the policy to Plaintiff representing that it provided "Long Term Care" and forms received from Bankers after Plaintiff purchased the policy referred to it as "your Long Term Care coverage." After the claim was presented, Plaintiff received five letters from Bankers between February and October, 2006 that referred to "your LONG TERM CARE insurance." In late October, 2006 Mr. Rowe questioned how Bankers could contend that coverage would be ending shortly when he and his wife had bought the policy in good faith as "Long Term," and the claim had started less than a year ago. Bankers Life Vice President responded stating that Gloria's policy was not for Long Term Care.

39.    Two days after the Vice President told Gloria she did not have Long Term Care coverage she received a letter from Bankers benefits department referring to "your LONG TERM CARE insurance," and two weeks later she received another letter from Bankers again referring to "your LONG TERM CARE policy" telling her that she had received $29,767.50 from her claims which is the maximum that the policy will pay. About three weeks later

Gloria received another letter from Bankers dated December 27, 2006 that again told her she had received the maximum benefit under "your LONG TERM CARE insurance."

40.     Additional bills were submitted to Bankers for Gloria's home health care for the month of December, 2006, but Bankers denied the claims with three additional letters in January 2007, referring to "your LONG TERM CARE insurance" having paid a maximum benefit of $29,767.50, and "we can't pay more now."

41.     Nothing that Bankers told Gloria and her husband now makes any sense. The Policy was sold as providing "long-term care coverage" and Bankers kept referring to it as long-term care insurance, but terminated benefits in less than a year. In 2006, two agents in Bankers' local office said the benefits would stop in 180 days, but they did not stop in 180 days. The April 24, 2006 letter referred to "UNLIMITED" Maximum Benefit Amount and the benefit for any one period of expense increasing to $31,320 and Mr. Rowe paid another year's premium; but then the termination letter of 12/7/06 says the policy only pays $29,767.50 and since that amount had now been paid there would be no further benefits.

42.     Another conflicting set of representations involves the November 2, 2006 letter from a Bankers Life Vice President stating that it was not a Long Term Care policy but that there was still a balance of $5,482.25 left after expenses through October 27, 2006 had been paid by Bankers. But Bankers Life only paid $3,465 for expenses after October 27, 2006 when it terminated benefits as of December 1, 2006.

43.     Nobody at Bankers seemed to agree on what the policy provided or what the coverages were. Gloria and Fred Rowe relied upon the Bankers Life agent, Falicia Soller.

and on Bankers employees who kept referring to it as a "Long Term Care policy." The protection provided under the interpretation being put on the coverage by Bankers has not been "Long Term" or in compliance with representations made by Bankers and its agents. Nor does the interpretation being used by Bankers' management comport with the coverage provided under the terms of the policy.

44.    Under the language contained in the policy, the reasonable expectations of the insured, the implied-in-law covenant of good faith and fair dealing, and in keeping with Bankers' fiduciary-like obligation to pay Long Term Care benefits to Gloria as represented in the sale, the communications and the terms of the policy, Bankers was obligated to pay benefits for Long Term Care and has wrongfully denied the benefits and coverage.

45.    The use of misrepresentation, deception, and other misconduct in the sale of long-term care insurance to the elderly has been a practice engaged in by some insurers for many years. Bankers Life had knowledge that the practices utilized in the sale of long-term care insurance to Gloria and in the processing of her claims were improper, in conscious disregard of her rights and interests and done with an intent to harm. The Sub-Committee on Health and Long Term Care of the Select Committee on Aging in the U.S. House of Representatives, 102nd Congress, First Session, June 1991, investigated and issued a report on "*Abuses In The Sale Of Long-Term Care Insurance To The Elderly*," finding that the "most common abuse identified by staff was exaggeration of what the policy would cover . . . grossly exaggerating the benefits."

46.    The 1991 Congressional Report also stated that one of the abuses of long-term

insurers was writing policies to cover only licensed or certified caregivers when licensing of home health care providers is not required or available in many areas. That specific abuse was used on Gloria's claim on a policy sold in Arizona that was written to cover only licensed or certified caregivers when licensing of home health care providers is not done in Arizona. Therefore, no one would qualify for such care and the use of that qualification for coverage in Arizona was a fraud on the elderly. Bankers attempted to employ that tactic on Gloria's claim, initially denying it because Visiting Angels was not a licensed home health care provider. If Fred and Visiting Angels had not persisted in complaints until Bankers finally paid for the Visiting Angels' care, Bankers would have gotten away with selling "a non-benefit" in Arizona. Bankers sold Gloria coverage that was illusory, deceptive and a fraud on the elderly.

47.    The Senate Committee defined "long-term" care as "the kind of day-in, day-out care an individual may require if stricken with a chronic illness or a disability which lasts an extended period of time and which leaves that person unable to care for him or herself." The policy Bankers sold to Gloria as "long term care insurance," which specifically provides coverage for Alzheimer's disease but terminates in less than a year, is also in that regard coverage which is illusory, deceptive and a fraud on the elderly.

48.    The Congressional Report concluded that "abuses in the sale of this insurance were found to be rampant, wide-spread and increasing," and that long-term care insurers were using numerous "limitations, loopholes, hidden and complex clauses, to avoid, deny or limit long term care." The abuses recognized by the Congressional Committee in June 1991, are

still engaged in by Bankers and its agents.

49.     Neither agent Soller or Bankers disclosed to Gloria that Bankers was restricting coverage under this policy so that it was not really providing long term care, while at the same time they were touting it as long-term care coverage.

50.     Gloria and Fred relied upon the representations of agent Soller and of Bankers that the insurance provided long-term care coverage, and also upon the representations of Bankers' CEO that Bankers had a great reputation and was "one of the most respected insurance companies in the United States," when they were solicited to pay more premiums to renew the policy.  The falsity of the representations as to Bankers providing long-term care has been set forth above. The representations by Bankers' CEO were also false.  The Weiss Ratings of strongest and weakest long-term care insurers rates Bankers in the lowest grouping with only a D+ rating and with a caution that "low-rated insurance companies should be avoided. . . ."

## FIRST CLAIM FOR RELIEF

Plaintiffs, for their First Claim for Relief against Defendant Bankers Life and Casualty Company for breach of the duty of good faith and fair dealing, allege as follows:

51.     Plaintiffs incorporate and reallege the GENERAL ALLEGATIONS, as though fully set forth herein.

52.     Defendant Bankers owed Plaintiffs a duty of good faith and fair dealing arising out of the insurance policy purchased.

53.     Defendant Bankers breached that duty by its actions and through a course of conduct involving Plaintiff's coverage and claims, including:

(a)     Unreasonable delay;

(b)     Non-disclosure;

(c)     Failure to comply with policy provisions;

(d)     Misrepresentation;

(e)     Refusing to investigate or consider Plaintiff's interests;

(f)     Refusing to assist Plaintiff on her claim;

(g)     By the unreasonable manner in which it processed Plaintiff's claim and reached its decisions to try to save Bankers money at the expense of its insured;

(h)     The policy that was sold and represented by Bankers and its agent as a Long Term Care policy is not a long-term care policy under the interpretation being put on the coverage by Bankers.

(i)     Wrongfully representing that the coverage provided for long term care and then refusing to pay for long term care;

(j)     Wrongfully refusing to pay covered benefits owed under the Policy;

(k)     Misrepresenting and deceiving Plaintiffs as to the benefits to be provided under the Policy;

(l)     Delaying claim payments and failing to pay interest on late payments as

required by A.R.S. § 20-462.

    (m)    By other acts and omissions not yet known but which will be revealed in discovery and preparation for trial in this matter.

54.    The Bankers' policy promises to pay a "maximum benefit for any one period of expense" of $27,000.  It also indicates there is a 20 day "Elimination Period" which must be satisfied for any one period of expense before benefits are payable.  The policy also indicates that "Any One Period of Expense" begins when a family member first incurs a charge for covered expenses and ends on the earlier when 1) "after six consecutive months, during which the family member has not required any treatment or services for those conditions which cause the prior One Period of Expense; or 2) the Maximum Benefit has been exhausted."

55.    In the present case, Bankers stopped paying benefits claiming that the Maximum Benefit had been paid.  Under the terms of the policy however, payment of the Maximum Benefit signaled the end of "One Period of Expense," and therefore the beginning of a new "One Period of Expense."  While the beginning of a new "One Period of Expense" would require satisfaction of the new 20 day elimination period before benefits were due, it would also, as long as the policy is in effect, revive the insured's rights to receive a new Maximum Benefit Amount.  Bankers is in breach of the promises of its policy by not paying benefits at the present time for Mrs. Rowe's covered expenses.  Although Mr. Rowe was informed on the telephone by a representative of Bankers that their benefits would renew and they would therefore be entitled to continue receiving benefits, Bankers has failed to pay any

benefits since that time.

56.   Plaintiffs were damaged by Bankers' actions in that they have suffered financial loss as a result of Bankers' refusal to pay benefits.  Plaintiffs have been further damaged by the loss of use of monies and other consequential damages.  In addition, Bankers' actions have resulted in personal injury, anxiety, frustration, worry, feelings of despair and betrayal, and mental and emotional distress, which were a proximate result of Bankers' wrongful conduct.

57.   Bankers' actions were intentional, wilful, and in conscious disregard of the substantial harm to be done to Plaintiffs by such conduct.  Plaintiffs also believe and therefore allege that such conduct was part of a plan and pattern of practice at Bankers designed to profit the Company at the expense of its own insureds, such as plaintiffs and others.   An award of punitive and exemplary damages is therefore warranted in this case to punish and deter such conduct in the future.

WHEREFORE, Plaintiffs pray for:

a)   Compensatory damages for unpaid benefits, future benefits, and loss of use of benefits resulting from Defendant's misconduct, in a sum to be determined at the time of trial;

b)   Compensatory damages for personal injuries, mental and emotional distress and anxiety and other incidental damages in a sum to be proved at trial;

c)   For future benefits based on Gloria's life expectancy and probable increase in the cost of home health care and/or nursing home care;

d) Punitive and exemplary damages in an amount appropriate to punish and to deter Defendant from further misconduct in the future;

e) For an award of Plaintiffs' attorneys fees, pursuant to A.R.S. Sec. 12-341.01;

f) For costs of suit herein incurred; and,

g) For such other and further relief as to the Court seems just and proper.

## SECOND CLAIM FOR RELIEF

For their Second Claim for Relief based on negligence and malpractice by Defendant Soller, Plaintiffs allege as follows:

58.    Plaintiffs reallege all previous Paragraphs of the General Allegations and First Claim for Relief, as though set forth fully herein.

59.    Defendant Soller, a licensed insurance agent who held herself out as a responsible professional in the field of insurance, owed Plaintiffs a duty to provide competent and responsible service and advice in her conduct of insurance business with Plaintiffs.  That duty included advising Plaintiffs of any dangers and disadvantages flowing from transactions in which she acted as agent.

60.    Defendant Soller also had a duty to not misrepresent the effects of transactions which she conducted on behalf of Plaintiffs, and especially those which she solicited.

61.    Defendant Soller breached such duties in the following respects:

(a)    By soliciting Plaintiffs to purchase the Bankers' Policy and representing

to them that the Policy provided "long term care" coverage when the Bankers approach under the policy would not provide for a period of even one year and therefore was absolutely not long term care insurance;

(b)    By other acts and omissions of which Plaintiffs are presently unaware but which will be revealed during discovery in preparation for trial.

62.    Plaintiffs have been damaged financially by Soller's conduct to the extent that it has resulted in Gloria failing to receive long-term care coverage.

63.    Plaintiffs have been further damaged by worry, aggravation, feelings of betrayal and mental and emotional distress as a direct and proximate result of Soller's conduct.

64.    Plaintiffs believe, and therefore allege, that Soller's conduct was intentional, wilful, wanton, in conscious disregard of Plaintiffs' rights and interests, and as part of a plan and pattern to profit Defendant Soller through the sale of such policies even when that sale was contrary to the needs and interests of her clients.  An award of punitive and exemplary damages is therefore appropriate to punish and deter such conduct in the future.

WHEREFORE, Plaintiffs pray for relief against Defendant Soller, as follows:

a)    Compensatory damages sufficient to compensate Plaintiffs for their loss of benefits and consequential financial damages;

b)    Damages for mental and emotional distress and anxiety proximately caused by Soller's actions;

c)    Punitive and exemplary damages in an amount appropriate to punish and to deter Defendant from further misconduct in the future;

d)      For costs of suit herein incurred; and,

e)      For such other and further relief as to the Court seems just and proper.

## THIRD CLAIM FOR RELIEF

Plaintiffs, for a Third Claim for Relief, based on common law fraud against Defendants Bankers and Soller, allege as follows:

65.     Plaintiffs reallege all the previous Paragraphs of the General Allegations, First Claim for Relief, and Second Claim for Relief, as though set forth fully herein.

66.     Defendant Bankers, together with and through its agent Defendant Soller, induced Plaintiffs to purchase the Bankers' policy by falsely representing to Plaintiffs that it provided long term care benefits and that it would be to Plaintiffs' advantage to purchase that Policy.  Such representations were false and material and Defendants Bankers and Soller knew and were aware of their falsity.  Defendants made such misrepresentations with the intent that Plaintiffs act upon them and purchase the Bankers' Policy instead of shopping with other insurance carriers for long-term care coverage.  Plaintiffs were ignorant and unaware of the falsity of those statements.  Plaintiffs reasonably relied upon such statements communicated to them by their agent, whom they trusted, and apparently endorsed by the insurance company who received the Application.  Plaintiffs had a right to reasonably rely on such representations.

67.     As a direct and proximate result of such representations, Plaintiffs relied on Defendants' and stopped shopping for long term care coverage which would unquestionably

have provided the benefits of which they are now in need.  Plaintiffs have been directly and proximately injured by their reliance on such statements in view of Bankers' refusal now to pay such benefits under the Policy.

68.     In addition to such financial injury, Plaintiffs have suffered feelings of betrayal, anger, frustration and other mental and emotional distress as a direct result of such fraud.

69.     Such fraud was deliberate, and was part of an intentional plan by Defendants to profit themselves by misleading the elderly couple relying on their representations.  It was done deliberately, and in callous and conscious disregard of their rights and interests.  Plaintiffs therefore seek an award of punitive damages in order to punish and deter such conduct.

WHEREFORE, Plaintiffs pray for judgment as follows:

a)     Compensatory damages sufficient to compensate Plaintiffs for their loss of benefits and consequential financial damages;

b)     Damages for mental and emotional distress and anxiety proximately caused by Defendants' actions;

c)     For future benefits based on Gloria's life expectancy and probable increase in the cost of home health care and/or nursing home care;

d)     Punitive and exemplary damages in an amount appropriate to punish and to deter Defendants from further misconduct in the future;

e)     For costs of suit herein incurred; and,

f)     For such other and further relief as to the Court seems just and proper.

## FOURTH CLAIM FOR RELIEF

For their Fourth Claim for Relief, which is based on constructive fraud, against Defendants Bankers and Soller, Plaintiffs allege as follows:

70.    Plaintiffs reallege all the previous Paragraphs of the General Allegations, First Claim for Relief, Second Claim for Relief, and Third Claim for Relief, as though set forth fully herein.

71.    A relationship of trust and confidence existed between Plaintiffs and their insurance agent and insurance company.  Defendant Bankers held itself out as a reputable insurance company upon which its insureds could rely, calling itself a "Friend," in various correspondence with Plaintiffs.

72.    Similarly, Defendant Soller held herself out as a competent and professional insurance agent upon whom his clients could reasonably rely.  She claimed she was providing them with "superior service, and helpful, timely advice to meet [their] important lifestyle protection and retirement savings goals." There existed a fiduciary-like relationship between Plaintiffs and Defendants Bankers and Soller.  That was particularly true in view of Plaintiffs' advanced age, and Defendants' knowledge of the importance to Plaintiffs of the matters involved in their transactions.

73.    Defendants had a duty under such circumstances to make full and truthful disclosure to Plaintiffs in all matters arising out of those transactions.  Defendants failed to do so and are liable for both their misrepresentations and/or their concealment regarding the

relative lack of benefit and substantial risk and danger to Plaintiffs in purchasing Bankers' policy to the exclusion of all others.

74.    Plaintiffs have been directly and proximately injured by their reliance on such statements in view of Bankers' present refusal to pay long-term care benefits.

75.    In addition to such financial injury, Plaintiffs have suffered feelings of betrayal, anger, frustration and other mental and emotional distress as a direct result of such fraud.

76.    Such fraud was deliberate, and was part of an intentional plan by Defendants to profit themselves by misleading the elderly couple relying on their representations. It was done deliberately, and in callous and conscious disregard of their rights and interests. Plaintiffs therefore seek an award of punitive damages in order to punish and deter such conduct.

WHEREFORE, Plaintiffs pray for judgment as follows:

a)    Compensatory damages sufficient to compensate Plaintiffs for their loss of benefits and consequential financial damages;

b)    Damages for mental and emotional distress and anxiety proximately caused by Defendants' actions;

c)    For future benefits based on Gloria's life expectancy and probable increase in the cost of home health care and/or nursing home care;

d)    Punitive and exemplary damages in an amount appropriate to punish and to deter Defendants from further misconduct in the future;

e)    For costs of suit herein incurred; and,

## JURY REQUEST

77.    Plaintiffs request a jury in the trial of this matter.

Respectfully submitted this _25th_ day of _May_ , 2007.

**THUR & O'SULLIVAN, P.C.**

By _____
      Calvin C. Thur
      3800 North Central Avenue
      Suite 810
      Phoenix, AZ  85012
      Attorney for Plaintiffs

**EXHIBIT 2**

1  William M. Demlong (I.D. No. 012458)
   Nathanael J. Scheer (I.D. No. 023815)
2  **KUNZ PLITT HYLAND**
   **DEMLONG & KLEIFIELD**
3  3838 N. Central Avenue
   Suite 1500
4  Phoenix, Arizona 85012-1902
   (602) 331-4600
5  wmd@kunzlegal.com
   njs@kunzlegal.com
6
   Attorneys for Defendants Bankers
7  Life Variable Life Insurance Company
   and Falicia M. Soller
8
                **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
9
                   **IN AND FOR THE COUNTY OF MARICOPA**
10
11 | GLORIA A. ROWE by her Guardian ad | No. CV 2007-009455 |
   | Litem FRED ROWE, and FRED ROWE, | |
12 | | **NOTIFICATION OF NOTICE OF** |
   | Plaintiffs | **REMOVAL** |
13 | | |
   | v. | (Assigned to the Hon. John A. Buttrick) |
14 | | |
   | BANKERS LIFE AND CASUALTY | |
15 | COMPANY, a foreign corporation; | |
   | FALICIA M. SOLLER, and JOHN | |
16 | DOES 1 through 2, | |
   | | |
17 | Defendants. | |

18 **TO:  THE CLERK OF THE CAPTIONED COURT, THE COURT**
       **ADMINISTRATOR OF THE MARICOPA COUNTY SUPERIOR COURT,**
19     **AND COUNSEL FOR PLAINTIFF**

20        PLEASE TAKE NOTICE that, on this date, Defendants Bankers Life and

21 Casualty Company and Falicia M. Soller filed in the United States District Court for the

22 District of Arizona a Notice of Removal of the above-captioned case from this Court to

23 District Court.  A true and correct copy of the Notice of Removal filed in District Court is

24 attached hereto.

25

1    DATED this *29th* day of June, 2007.

2                                          **KUNZ PLITT HYLAND**
                                           **DEMLONG & KLEIFIELD**
3                                          A Professional Corporation

4

5                                          By_____
                                               William M. Demlong
6                                              Nathanael Scheer
                                               3838 N. Central Avenue
7                                              Suite 1500
                                               Phoenix, Arizona 85012-1902
8                                              Attorneys for Defendants Bankers
                                               Life Variable Life Insurance
9                                              Company and Falicia M. Soller

10   COPY of the foregoing sent by
     First Class U.S. Mail service
11   this 29th day of June, 2007, to:

12   Calvin C. Thur, Esq.
     Thur & O'Sullivan, P.C.
13   3800 N. Central Avenue, Suite 810
     Phoenix, AZ 85012
14   Attorneys for Plaintiffs

15

16   _____

17

18

19

20

21

22

23

24

25