**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gloria A. Rowe by her Guardian ad Litem Fred Rowe, and Fred Rowe,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Bankers Life and Casualty Company; Falicia M. Soller; and John Does 1 through 2,<br><br>　　　　Defendants. | No. CV 07-1281-PHX-MHM<br><br>**ORDER** |

　　　　This is an insurance bad faith cause of action. Plaintiffs originally filed this case in Maricopa County Superior Court. Defendant timely removed the case to this Court. Plaintiffs have included four causes of action in their complaint, including the following: (1) breach of the duty of good faith and fair dealing by Bankers Life and Casualty Company ("Bankers"); (2) negligence and malpractice against Defendant Soller; (3) common law fraud as to Defendants Bankers and Soller; and (4) constructive fraud as to Defendants Bankers and Soller. Plaintiffs also seek punitive damages.

　　　　Presently pending before the Court is Plaintiffs' Motion for Partial Summary Judgment (Doc. 17). In their Motion for Partial Summary Judgment, Plaintiffs seek requiring that Bankers pay benefits under the policy for at least 24 consecutive months as a matter of

law. Plaintiffs also seek to have the Court find that the "restoration of benefits" provision is an unenforceable exclusion or limitation of coverage. The Motion is fully briefed. After recently granting Plaintiffs' Motion for Reconsideration and hearing oral argument on the Motion for Partial Summary Judgment, the Court hereby issues the following Order.

## FACTUAL BACKGROUND

Plaintiffs Fred and Gloria Rowe bought an insurance policy from Bankers Life and Casualty Company ("Bankers") for Mrs. Rowe in 2003. Mrs. Rowe was 77 years of age at the time. Leading up to the purchase of the policy, Bankers' sales representative, Defendant Falicia Soller met with Plaintiffs Fred and Gloria Rowe on at least three occasions in 2003.

The policy the Rowes purchased provided the following:

- It is "GUARANTEED RENEWABLE," i.e., the policy "may be renewed for each Family Member on any renewal date as long as such Family Member lives."

- For a Maximum Daily Benefit amount of $150.00 for nursing home and assisted living facility care and a Maximum Weekly Benefit amount of $1,050 for Home Health Care and Adult Day Care, and promises to pay a "Maximum Benefit for Any One Period of Expense" of $27,000.

- For an Elimination Period of 20 Days of Service and defined "Elimination Period" to mean "the number of days a Family Member must receive services included under Part I or Part II Covered Expenses before benefits are payable.

- Benefits for care of "the following covered conditions: Alzheimer's Disease, Parkinson's Disease, Senile Dementia or other nervous or mental disorders of organic origin."

- "Any One Period of Expense" begins when a Family Member first incurs a charge for covered expenses and ends on the earlier of when (1) "after six consecutive months during which the Family Member has not required any

        treatment or services for those conditions which causes the prior One Period of Expense, or (2) the Maximum Benefit has been exhausted."

- A "RESTORATION OF POLICY BENEFITS" provision stated that "[t]his policy's Maximum Benefit for Any One Period of Expense will be fully restored when a Family Member has not required treatment or services covered under this policy for six consecutive months for the same cause or causes for which a previous period of expense began."

- A "CONFORMITY WITH STATE STATUTES" provision stated that "[a]ny provision of this policy which . . . is in conflict with the laws of the state in which You live . . . is amended to conform to the minimum requirements of such laws."

Shortly after the sale, Mrs. Rowe received a Bankers folder with Policy Form GR-N325. In December 2004, Mrs. Rowe suffered from confusion and inability to perform some basic tasks of daily living. Her doctor diagnosed her with Alzheimer's. Mrs. Rowe became totally unable to care for herself in December 2005. At that time, Visiting Angels, a home health care provider, began providing home health care to Mrs. Rowe. Since that time, Mrs. Rowe has become incapacitated. Mr. Rowe now acts as Mrs. Rowe's guardian, handling her personal affairs, and is named Guardian ad Litem for purposes of this lawsuit.

Mr. Rowe presented Mrs. Rowe's claim to Bankers using a four-page claim form he received from Bankers, along with a cover page referring to benefits under "long term care" coverage. The claim form gave instructions on how to "file a claim" and referred to "two different claim forms for LONG TERM CARE." On January 16, 2006, Mrs. Rowe's physician, R. Christian Allen, M.D., completed Bankers' Physician's Claim Form, confirming Mrs. Rowe's condition as Alzheimer's. Dr. Allen recommended home health care six hours per day, seven days per week indefinitely.

Mrs. Rowe has received numerous correspondences from Bankers referring to her "long term care policy." In late October 2006, the Rowes received a notice from Bankers

- 3 -

1  that their benefits would soon terminate.  Mr. Rowe wrote to Bankers to inquire as to how
2  their coverage could be ending when the claim started less than a year before.  Bankers' Vice
3  President, K. Smith, responded by stating that Mrs. Rowe's policy was not for long term
4  care.   Two days later, Mrs. Rowe received a letter from Bankers referring to "your LONG
5  TERM CARE insurance."  Two weeks after that, Mrs. Rowe received a letter from Bankers
6  again referring to "you LONG TERM CARE policy."  This letter informed Mrs. Rowe that
7  she had received $29,767.50 for her claims, which, the letter informed, was the maximum
8  the policy would pay.  Three weeks later, Mrs. Rowe received another letter form Bankers,
9  dated December 27, 2006, that again told her that she had received the maximum benefit
10 under "your LONG TERM CARE insurance."  Additional bills were submitted to Bankers
11 for Mrs. Rowe's home health care for the month of December 2006, but Bankers denied the
12 claims with three additional letters in January 2007, referring to "your LONG TERM CARE
13 insurance" having paid a maximum benefit of $29,767.50.

Bankers has conveyed to the Rowes in numerous correspondences that "lifetime maximum benefit amounts" were "unlimited" and the policy promises to pay for multiple "periods of expense," each period of expense ending when the maximum benefit amount of $27,000[1] had been paid.  Bankers has not paid benefits for a new period of expense, apparently in reliance on a "restoration of benefits" provision in the policy, which states that the "Maximum Benefit for Any One Period of Expense" will be fully restored when the insured "has not required treatment or services covered under this Policy for six consecutive months for the same cause or causes for which a previous Period of Expense began."

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving

---

[1] The maximum benefit amount increased by 5% each year as a result of Plaintiffs paying an added premium amount.

- 4 -

1  party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; Celotex
2  Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d
3  1285, 1288-89 (9th Cir.1987).

4      Initially, the moving party bears the burden of showing that there is no material factual
5  in dispute.  Therefore, the court must regard as true the opposing party's evidence, if
6  supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg,
7  815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against
8  whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
9  U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558
10 (9th Cir. 1991).

11     The burden then shifts to the non-movant to establish the existence of material fact.
12 Celotex, 477 U.S. at 323.  The non-movant "must do more than simply show that there is
13 some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts
14 showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (quoting
15 Fed.R.Civ.P. 56(e)).

16     A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could
17 return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
18 248 (1986).  The non-movant's bare assertions, standing alone, are insufficient to create a
19 material issue of fact and defeat a motion for summary judgment. Id. at 247-48.

20                                      **DISCUSSION**
21 **I.**      **PAYMENT OF BENEFITS**

22     In their Motion for Partial Summary Judgment, Plaintiffs assert that Bankers marketed
23 and sold them a long term care policy.  Plaintiffs argue that the policy meets the statutory
24 requirements for long term care and therefore, under the Arizona Revised Statute, Plaintiffs
25 are entitled to at least twenty-four months of coverage. Plaintiff contends that insurance
26 policies are defined under the Arizona statutory scheme not by their title, or any descriptive
27 names on the policy itself, but instead, by the type of benefits promised.

28

1   In opposition, Defendants assert that the GR-N325 policy sold to Plaintiffs states that
2   it is a "limited benefit, short term, convalescent care insurance policy," and therefore it does
3   not fall within the definition of "long term care."  Defendants also claim the policy is for
4   "health coverage," excluding it from the statutory definition of long term care insurance
5   because the statute expressly excludes "basic medicare supplement coverage, basic hospital
6   expense coverage, basic medical and surgical expense coverage, major medical expense
7   coverage, . . . specified disease coverage, . . . or limited benefit health coverage . . . ." A.R.S.
8   § 20-1691.  Defendants assert that within the context of insurance, the term "coverage" is not
9   solely determined by the type of benefit provided but is determined by "other factors as well
10  including the length and duration of said benefits."  Response at p. 4.  However, Defendants
11  provide no authority for this assertion.

12  Defendants claim the Arizona Department of Insurance ("AZ DOI") approved the GR-
13  N325 policy as a short-term care insurance.  See Response at pp. 2, 4, and 12.  However, a
14  review of the document the AZ DOI sent approving Defendants' GR-N320 policy, makes
15  clear that the AZ DOI approved this policy as a long-term insurance.  See Defendants'
16  ("Defs'") Statement of Facts ("SOF"), Exh. E.  On the form the AZ DOI used to approve
17  Bankers' policy, it checked a box indicating that the policy was for "LTC/Home Health
18  Care."  Id.  It appears that "LTC" means long term care.  During oral argument, Defendants
19  claimed the box "LTC/Home Health Care" was a multi-purpose box and that the "home
20  health care" part of the box description includes short-term care.  However, either way,
21  approval of an insurance policy form by the DOI is not determinative of whether policy
22  language complies with applicable statutes. See Fleming v. United Services Auto. Assn., 330
23  Or. 62, 996 P.2d 501, 504 (2000).

24  Questions of policy interpretation are for the court to decide.  Benevides v. Arizona
25  Property & Cas. Ins. Guar. Fund, 184 Ariz. 610, 911 P.2d 616, 619 (Ariz.App. 1995); Blue
26  Ridge Ins. Co. v. Stanevich, 142 F.3d 1145 (9th Cir. 1998).  The Arizona Supreme Court
27  decision St. Paul Fire & Marine Ins. Co. v. Gilmore, sets forth that "[u]nder the operation of
28

- 6 -

our statutes governing insurance, the type of policy is determined by the type of coverage provided, not by the label affixed by the insurer . . . . The statutes are part of every insurance policy and mandate that policies providing specific types of coverage meet specific requirements." 168 Ariz. 159, 812 P.3d 977, 983 (1991).

"A long term care policy shall provide coverage for at least twenty-four consecutive months for each person covered." Arizona Revised Statute § 20-1691.03(c). Arizona Revised Statute Section 20-1691 ¶ 8 defines "long-term care insurance" as a policy that provides the following coverage:

> an individual or group insurance policy . . . advertised, marketed, offered or designed to provide coverage for each covered person on an expense-incurred, indemnity, prepaid or other basis for one or more necessary or medically necessary diagnostic, preventative, therapeutic, rehabilitative, maintenance, personal or custodial care services provided in a setting other than an acute care setting of a hospital . . . . Long-term care insurance also includes a policy . . . that provides for payment of benefits based on cognitive impairment or loss of functional capacity. Long-term care insurance does not include any insurance policy that is offered primarily to provide basic medicare supplement coverage, basic hospital expense coverage, basic medical and surgical expense coverage, major medical expense coverage, disability income or related asset protection coverage, hospital confinement indemnity coverage, accident only coverage, specified disease coverage, specified accident coverage or limited benefit health coverage or riders to the insurance policy or a life insurance policy that accelerates the death benefit for terminal illness, medical conditions requiring extraordinary medical intervention or permanent institutional confinement, that provides the option of a lump sum payment for those benefits and in which the benefits or the eligibility for the benefits is not conditioned on the receipt of long-term care.

In contrast, the Arizona Revised Statute defines "limited benefit coverage" for purposes of the insurance statutes and indicates the following:

> For the purposes of this title, "limited benefit coverage" means an insurance policy that is designed, advertised and marketed to supplement major medical insurance and that includes accident only, dental only, vision only, disability income only, fixed or hospital indemnity, specified disease insurance, credit insurance or Taft-Hartley trusts.

A.R.S. § 20-1137(b).

1  The insurance policy Defendants sold to Plaintiffs covers nursing home care, assisted
2  living facility care, home health care, hospice care, and adult day care. See Plaintiffs'
3  Statement of Facts ("PSOF"), Exh. 2, at pp. 6-9. The coverage is not merely to cover health
4  care costs, as Defendants have asserted. Indeed, during her deposition, Defendant Soller
5  confirmed the benefits under GR-N325 include either home health care or nursing home care,
6  personal care benefits, custodial care, and even housecleaning. Dep. of Falicia Soller,
7  October 19, 2007, Pls' Ex. 33 at pp. 54-56. Ms. Soller also stated that the GR-N325 policy
8  covers custodial care for someone with Alzheimer's and therapeutic benefits, including
9  physical therapy or speech therapy. Id. These types of benefits also fall squarely within the
10 statutory Arizona Revised Statute's definition of long-term care. They do not fit within the
11 definition of those things excluded from long term care under A.R.S. § 20-1691 as Defendant
12 asserts.

13  As further evidence of the nature of the policy, Plaintiffs highlight that Bankers'
14 Assistant to the Office of the President of the Claim Department and former Customer
15 Service Manager, Vicki A. Bhatti, testified at her deposition on January 17, 2008, that as to
16 policy GR-N325, the policy at issue in the present case, "I know it's a long-term care policy."
17 Pls' Supp. of New Evidence in Sup. of Pls' Reply, at p. 2.

18  During oral argument, Defendants asserted that it is inappropriate to use A.R.S. § 20-
19 1137(b) as the only exception to A.R.S. § 20-1691 ¶ 8 because A.R.S. § 20-1137(b) is called
20 "limited benefit coverage" rather than "limited benefit health coverage." However,
21 Defendants concede that there is no definition under Title 20 of the Arizona Revised Statute
22 for "limited benefit health coverage." The type of coverage listed in A.R.S. § 20-1137(b) are
23 health-related benefits, including such things as accident, dental, and vision coverage. Thus,
24 it seems irrelevant that the title does not include the word "health." If the type of care
25 provided in the Rowe's policy was intended to be excluded from the twenty-four month
26 requirement, it seemingly would be listed in A.R.S. § 20-1137(b). At any rate, the Rowe's
27 policy states that any provision of the policy that conflicts with a state statute is amended to

1  conform with state law.  Thus, Defendants' argument that the statute does not comport with
2  the Rowes' policy is not compelling.

3  Also during oral argument, Defendants contended that the Court should not get in the
4  heads of the legislature to determine their intent in passing A.R.S. § 20-1691.  However,
5  upon closer review, such an understanding would not be a guessing game. The legislature's
6  Committee Minutes make clear that the purpose of the 1989 amended statute was to mandate
7  a minimum of twenty-four months of benefits for all insurance policies that fall within the
8  definition of "long-term care insurance" at A.R.S. § 20-1691 ¶ 8.  In particular, the comments
9  of Susan Gallinger, Director of the Arizona Department of Insurance at the time, in response
10 to questions by Senator Corpstein, convey that the mandate was to apply to all such policies,
11 and that no disclaimers or disclosures on policies would suffice to justify the sale of coverage
12 with lesser benefits.  Defs' Response ("Resp."), Minutes of the Committee on CLIB, Jan. 25,
13 Doc. 118-3 at pp. 4-5.  Thus, the Committee Minutes made clear what the legislature
14 intended in creating A.R.S. § 20-1691.03(c), which was to ensure that those who bought care
15 insurance, usually the elderly, would be ensured for at least twenty-four months.

16 Following oral argument, Defendants filed a Supplemental Response Re: Legislative
17 History, in which they assert that the policy at issue is not a long term insurance policy
18 because an insurance policy only constitutes long term care if the policy "provide[s] the
19 defined benefits for a "long" time (*i.e.,* 24 months under Arizona law)."  Thus, Defendants
20 argue that the intent of the original long-term care legislation in Arizona, which was passed
21 in 1987, was to define a duration requirement to long term care and that no policy met the
22 definition unless it provided that length of benefits.  That may have been the case with the
23 1987 legislation.  However, in 1989 long-term care legislation in Arizona was significantly
24 altered, both in structure and in content, which resulted in the statutes governing the present
25 case.  See Defs' Resp., Minutes of the Committee on CLIB, January 25, 1989, Doc. 118-3
26 at p. 4.  The effect of the changes between the 1987 legislation and the 1989 legislation was
27 to close "loopholes" in the protection of the elderly against abusive practice and inadequate
28

- 9 -

1 coverage. Id. The "loophole" that was closed in the twenty-four month duration
2 requirement, done by separating the duration requirement out of the definition and into a
3 separate statute, seems to have been done to ensure that any care policy that otherwise met
4 the definition of long-term care be required to provide twenty-four months of benefits. See
5 id. Minutes of the Committee on CLIB – Susan Gallinger's comments at pp. 4-5. This is
6 evidenced by the proposed change in the "compliance" and "applicability" section of the
7 Arizona Revised Statute. The old version of A.R.S. § 20-1691.06 contained language that
8 would have exempted from the requirements policies that were not "advertised, marketed or
9 offered" as long-term care insurance or nursing home insurance. With the 1989 changes, the
10 original language of that Section was struck and the new mandate for long-term care was
11 established. Thus, the change read as follows:

> ~~A policy which is not advertised, marketed, or offered as long-term care insurance or nursing home insurance need not meet the requirements of this Act.~~ A POLICY WHICH MEETS THE DEFINITION OF LONG-TERM CARE INSURANCE, AS DEFINED BY SECTION 20-1691, ARIZONA REVISED STATUTES, SHALL COMPLY WITH THE REQUIREMENTS OF THIS ACT, UNLESS SPECIFICALLY EXCLUDED.

Defs' Resp., Exh. 2, (Doc. 118-3), at pp. 14-23 (strike-outs and all caps in original).

As further evidence of the legislative intent to mandate twenty-four months of coverage for any policy that meets the definition of long-term care, Senate Bill 1003, enacting A.R.S. § 20-1691 into law, was passed with the stated purpose of increasing the minimum coverage period from twelve to twenty-four months, and to have policies that meet the definition of long-term care "transfer . . . to the section covering the policy limitations to insure that any long-term care policy covers at least 24 months." Defs' Resp., Exh. 2 (Doc. 118-3), at p. 7. Thus, despite Defendants' attempts to convey otherwise, the legislative intent in enacting A.R.S. § 20-1691 is clear. The legislature intended that any policy that meets the definition of long-term care is required to provide at least twenty-four months of coverage.

On summary judgment, the moving party is entitled to judgment as a matter of law if the court determines that the record before it contains "no genuine issue as to any material fact." Fed R. Civ. P. 56(c). In light of the type of care provided in the policy, the statutory definition of long term care, and the statutory requirement that long term care provide at least twenty-four consecutive months, the Court finds no genuine issue of material fact remaining as to this issue. Accordingly, the Court grants Plaintiffs' Motion for Partial Summary Judgment on this issue. Bankers is required as a matter of law to provide Mrs. Rowe with at least twenty-four months of coverage.

## II. RESTORATION OF POLICY BENEFITS

Plaintiffs also seek summary judgment regarding the restoration of Policy Benefits provision in their insurance policy. Plaintiffs assert that this is an impermissible exclusion or limitation of coverage in violation of Arizona Department of Insurance Regulations.

In opposition, Defendant asserts that the Restoration of Policy Benefits clause in the policy serves to "restore" benefits when an insured has gone at least six months without treatment after experiencing a covered condition, which Defendant contends is consistent with a "convalescent care" policy.

As found above, the policy Bankers sold to the Rowes was a long term care policy. The Arizona Administrative Code requires that "[a] long-term care insurance policy . . . containing any limitations or conditions for eligibility . . . shall describe the limitations . . . in a separate paragraph of the policy . . . and shall label the paragraph 'Limitations or Conditions on Eligibility for Benefits.'" Ariz. Admin. Code R20-6-1004(B)(2).

The Restoration of Policy Benefits states as follows:

> This policy's Maximum Benefit for Any One Period of Expense will be fully restored when a Family Member has not required treatment or services covered under this policy for six consecutive months for the same cause or causes for which a previous Period of Expense began. If this policy includes the Annual Benefit Increase Option, as shown on the Schedule page, the amount restored will include any accumulated benefit increases provided as of the policy's last anniversary.

- 11 -

1  Defendant marketed its policy, and solicited renewal premiums promising "unlimited"
2  and "lifetime" benefits, as well as coverage for chronic conditions such as Alzheimer's, but
3  then used the "Restoration of Policy Benefits" provision of the policy to terminate benefits
4  for any chronic condition after approximately six months unless the insured were able to go
5  for the next six months without the need for care.  After Plaintiff Fred Rowe called
6  Defendant to inquire as to why the "lifetime" benefits were being terminated, he received a
7  letter from the Company's Vice President, K. Smith, on February 23, 2007, which explained
8  that: "[The] policy will qualify for restoration of benefits if you have not received treatment
9  for any covered service listed in the policy for six months in a row."  PSOF ¶ 40.  This would
10 be virtually impossible when one suffers from a chronic condition, such as Alzheimer's.

By writing the "Restoration of Policy Benefits" clause, Bankers has essentially limiting the policy coverage to one six-month period for chronic conditions such as Alzheimer's.  In so doing, Defendants have taken away a significant purpose for the policy. Such an exclusion must meet the requirements of Arizona Administrative Code R20-6-1004(B)(2), which states as follows:

> A long-term care insurance policy or certificate containing any limitations or conditions for eligibility . . . shall describe the limitations or conditions . . . in a separate paragraph of the policy . . . and shall label the paragraph "Limitations or Conditions on Eligibility for Benefits."

Bankers did not include this required language in its policy, specifically in the "Restoration of Policy Benefits" clause, despite the limitation the "Restoration" clause invokes.  Thus, the "Restoration of Policy Benefits" clause is an inappropriate limitation on benefits.  No genuine issue of material fact remains with regard to this issue.  Accordingly, Plaintiffs' Motion for Partial Summary Judgment is granted as to this issue.

## CONCLUSIONS

For the foregoing reasons,

**IT IS ORDERED** granting Plaintiffs' Motion for Partial Summary Judgment (Doc. 17).

DATED this 27th day of June, 2008.

_____
Mary H. Murguia
United States District Judge

- 13 -