**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Gloria A. Rowe, et al. | ) | No. CV-07-1281-PHX-MHM |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) | |
| Bankers Life and Casualty Company, et al. | ) ) | |
| Defendants. | ) ) ) | |

Currently pending before the Court are Defendants' Motion for Summary Judgment (Dkt.#89.), Plaintiffs' Motion to Reopen Discovery (Dkt.#133.), Plaintiffs' Motion to Expedite Ruling and Trial (Dkt.#137.), Defendants' Motion to Strike Exhibit One to Plaintiffs' Motion for Expedited Trial (Dkt.#142.), and Defendants' Motion to Certify the Court's July 1, 2008 and September 17, 2008 Orders for Interlocutory Appeal. (Dkt.#146.) After reviewing the relevant documents and determining oral argument unnecessary, the Court issues the following Order.

Having already issued three substantive Orders in this case (Dkt.##93, 129, 143.), the Court is intimately familiar with the underlying facts and sees no reason to now go through them in great detail. Nevertheless, the Court will briefly lay out the procedural posture of the instant lawsuit. On June 29, 2007, Defendants Bankers Life and Falicia Soller removed Plaintiffs Gloria and Fred Rowe's Complaint to federal court. (Dkt.#1.) The claims asserted by the Rowe's are as follows: (1) breach of the duty of good faith and fair dealing on the part

1  of Defendant Bankers Life; (2) negligence and malpractice as to Defendant Soller; (3)
2  common law fraud on the part of both Bankers Life and Soller; and (4) constructive fraud,
3  also allegedly committed by both Defendants.  On September 5, 2007, Plaintiffs filed a
4  Motion for Partial Summary Judgment. (Dkt.#17.)   Due to Gloria Rowe's deteriorating
5  state of health, on January 29, 2008, the Court ordered expedited review of Plaintiffs'
6  Summary Judgment Motion. (See Dkt.#71.)  On March 21, 2008, Defendants also moved
7  for Summary Judgment. (Dkt.#89.)   On April 16, 2008, the Court issued an Order denying
8  Plaintiffs' Partial Summary Judgment Motion. (Dkt.#93.) After Plaintiffs filed a Motion for
9  Reconsideration, the Court reversed its earlier position and entered Partial Summary
10 Judgment in favor of the Rowes. (Dkt.#129.)  In response to a request made by Defendants,
11 the Court thereafter clarified its holding in an Order dated September 17, 2008. (Dkt.#143.)
12 Defendants then moved the Court to certify those two Orders (Dkt.##129, 143.) for
13 interlocutory appeal before the Ninth Circuit,  requesting a stay of proceeding during the
14 pendency of any appellate process. (Dkt#146.)

15 **I.     Interlocutory Appeal**

16     As noted above, on April 16, 2008, the Court issued an Order in which it denied
17 Plaintiffs' Motion for Partial Summary Judgment.  After some confusion regarding the
18 availability of certain documents filed with the Court, particularly Plaintiffs' reply
19 memorandum, the Court determined that its ruling needed to be reconsidered.  On July 1,
20 2008, the Court issued a second Order, this time granting Plaintiffs' Motion for Partial
21 Summary Judgment. The reconsidered Opinion held that (1) the insurance contract between
22 the Parties was a long-term care policy pursuant to A.R.S. § 20-1691, and, as such, Plaintiff
23 was entitled to a minimum of twenty-four months of coverage under Arizona state law; and
24 (2) a clause labeled  "Restoration of Benefits" constituted an improperly labeled limitation
25 or exclusion under A.A.C. R20-6-1004(B)(2).  Defendants responded by filing their own
26 Motion for Reconsideration and/or Clarification. On September 18, 2008, the Court issued
27 yet another Order, this time reaffirming its ruling that the insurance contract between the
28 Parties was for long-term care and that the "Restoration of Benefits" clause was void.  But

1  the Court declined to rule on whether Mrs. Rowe was entitled to unlimited benefits once the
2  "Restoration of Benefits" clause was excised from the language of the contract. Instead, the
3  Court reserved that issue for the jury to determine at trial. Defendants have now moved the
4  Court to certify the July 1, 2008 and September 18, 2008 Orders for interlocutory appeal in
5  the Ninth Circuit.

6  The general rule is that the United States Courts of Appeals only have jurisdiction
7  over appeals from "final decisions of the district courts." See 28 U.S.C. § 1291;. See Van
8  Cauwenberghe v. Biard, 486 U.S. 517, 521-22 (1988) (discussing the so called 'final
9  judgment rule' and noting that a decision is not final "until there has been a decision by the
10 district court that ends the litigation on the merits and leaves nothing for the court to do but
11 execute the judgment") (internal quotations omitted). "Finality as a condition of review is
12 an historic characteristic of federal appellate procedure." United States v. Szado, 912 F.2d
13 390, 391 (9th Cir. 1990) (quoting Cobbledick v. United States, 309 U.S. 323, 324(1940)).
14 "Embodied in the finality requirement is a strong congressional policy against piecemeal
15 reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory
16 appeals." In re Subpoena Served on Cal. Public Utilities Com., 813 F.2d 1473, 1475 (9th
17 Cir. 1987) (quoting United States v. Nixon, 418 U.S. 683, 690 (1974) (internal quotations
18 omitted)).

19 Nevertheless, there exists a statutorily carved out exception which permits the district
20 court to certify an order for interlocutory review when the order (1) involves a controlling
21 question of law; (2) there is substantial ground for difference of opinion; and (3) an
22 immediate appeal from the order may materially advance the ultimate termination of the
23 litigation." 28 U.S.C. § 1292(b). The decision whether to certify an appeal lies within the
24 sound discretion of the district court. Loritz v. CMT Blues, 271 F. Supp. 2d 1252, 1253
25 (S.D. Cal. 2003) (citing Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co., 162 F.R.D.
26 482, 489 (E.D. Pa. 1995)).   Interlocutory appeal is also a process that should be used
27 sparingly and only under exceptional circumstances.  See In re Cement Antitrust Litigation,
28

673 F.2d 1020, 1027 (9th Cir. 1982); United States v. Woodbury, 263 F.2d 784, 788 n.11 (9th Cir. 1959).

The current case is not one that is well suited for a discretionary appeal. First, the scope of coverage issues do not implicate controlling questions of law, since appellate review would not dispose of a single claim in Plaintiffs' Complaint. In the instant case, Bankers Life and its agent Ms. Soller have been sued for the torts of bad faith coverage, negligent misrepresentation and common law and constructive fraud. Interlocutory appeal would not prevent any of these issues from proceeding to trial, and an immediate appeal would not greatly affect the time and resources that the Parties will expend in preparing for such a trial. See Lerner v. Atlantic Richfield Co., 690 F.2d 203, 211 (Temp. Emer. Ct. App. 1982) (noting the existence of an "unusual number of collateral questions of law" which rendered the legal issue inappropriate for interlocutory review)

With respect to the tort of bad faith, while resolving the scope of coverage under the contract is an important aspect of Plaintiffs' allegation of bad faith, the merits of that claim does not wholly depend on the interpretation of the insurance contract. Interlocutory appeal is not appropriate where rejection of one theory on appeal leaves another theory available to reach the same result. And in the instant case, Plaintiffs have at least two theories of bad faith against Bankers Life. The first theory is based on Bankers Life's initial refusal to pay long term care benefits, as required under state law. This aspect of the bad faith claim is indeed dependant on the Court's two previous rulings because if the contract is not a long-term care policy than Bankers Life could not have acted in bad faith in denying Mrs. Rowe's long-term care claim. However, Plaintiffs have a second theory of bad faith that is based upon Bankers Life's initial refusal to pay benefits after Plaintiffs failed to present a valid caregiver's license, when Bankers Life was aware such licenses were not available within the State of Arizona. Thus, even if the Ninth Circuit were to accept the instant appeal and ultimately rule in Defendants' favor, in no sense would Plaintiffs' entire bad faith claim be automatically defeated.

1  In addition, Plaintiffs' claims for common law and constructive fraud and negligent misrepresentation do not depend upon the Court's interpretation of the insurance contract and will proceed to trial irrespective of whether this Court correctly interpreted the language of the contract in its July 1, 2008 and September 18, 2008 Orders.

Next, an immediate appeal will not materially advance the ultimate termination of this lawsuit but would instead result in unnecessarily delay. Mrs. Rowe is gravely ill, suffering from Alzheimer's disease. Indeed, the rapidly deteriorating state of her health was the sole reason that this Court allowed Plaintiffs to pursue expedited review of their Partial Motion for Summary Judgment, and the Court continues to have a heightened interest in resolving this case as quickly and efficiently as possible. The Court remains concerned that a prolonged appeals process might irreparably harm Plaintiffs' claims. In light of Mrs. Rowe's current medical condition, Defendants have not provided the Court with a rationale that is substantial enough to justify piecemeal review. Other than wrongly contending that interlocutory appeal would dispose of Plaintiffs' claims, Defendants argue that interlocutory appeal would eliminate the need for 90-days of additional discovery sought by Plaintiffs and would provide valuable appellate review over a decision that may broadly impact existing insurance policies throughout the State of Arizona. However, neither of these justifications are strong enough to overcome the potential for prejudicial delay that might result from an immediate appeal. With respect to Plaintiffs' Motion to Reopen Discovery, the Court notes that the Motion will be denied, as Plaintiffs have not demonstrated a compelling need to engage in additional discovery. With respect to the alleged impact that the July 1, 2008 and September 18, 2008 Orders will have on existing insurance policies or future litigation, that factor alone does not justify immediate appellate review, particularly when the Court has not seen any quantitative evidence relating to the far reaching nature of its previous Orders.

As to the final statutory factor, whether there exists a substantial ground for a difference of opinion, the Court is aware that Defendants find the July 1, 2008 and September 18, 2008 Orders in error. However, as Plaintiff argues, "[m]ere disagreement, even vehement, with the Court's ruling . . . does not establish a substantial ground for difference

of opinion sufficient to satisfy the statutory requirement for an interlocutory appeal." Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group, F. Supp. 2d 16, 20 (D.D.C. 2002). Notwithstanding Defendants's strenuous opposition to the Court's reasoning, Defendants have not adequately demonstrated that this case presents the type of extraordinary legal issues that are appropriate for interlocutory appeal. See Woodbury, 263 F.2d at 788 n.11. Defendants argue that this is a matter of statutory first impression and that "courts everywhere routinely certify issues of first impression–including statutory or contract interpretation issues–for interlocutory appeal." (Dkt.#152, p. 7.) However, to the extent this case presents a matter of statutory first impression, it is only with respect to state law. Indeed, every case cited by Defendants to support this argument concerns federal statutory law. See Ass'n of Irritated Residents v. Fred Schakel Dairy, 2008 WL 2899912, *7-8 (E.D. Cal. June 22, 2008) (certifying an issue of first impression involving the federal Clean Air Act); AD Global Fund, LLC v. United States, 68 Fed. Cl. 663, 664-65 (Ct. Fed. Cl. 2005) (discussing certification of a portion of the Internal Revenue Code); Johnson v. Aljian, 490 F.3d 778, 780 (9th Cir. 2007) (accepting certification of an issue of first impression involving federal securities law); S.E.C. v. Gemstar TV Guide Intern, Inc., 367 F.3d 1087, 1092-93 (9th Cir. 2004), vacated, 384 F.3d 1090 (en banc) (accepting interlocutory appeal of an issue of first impression regarding the Sarbanes-Oxley Act); Burlington N. & Santa Fe Ry. Co. v. Vaughn, 509 F.3d 1085, 1089-90 (9th Cir. 2007) (not even discussing interlocutory appeal, but noting the applicability of the collateral order doctrine to federal tribal sovereign immunity). Defendants have not alerted the Court to a single instance of a federal district court certifying for interlocutory review an issue of first impression concerning a state statute, or more specifically, state insurance law. If Defendants intended to seek guidance on the coverage issues from an appellate court, rather than moving for interlocutory appeal in the Ninth Circuit, they should have made a timely attempt to seek certification from the Arizona Supreme Court, the institution that is charged with the task of being the final arbiter of state insurance and contract law. See A.R.S. § 12-1861; Ariz. Rules of Supreme Ct., R. 27; Binford v. Rhode, 116 F.3d 396, 399 (9th Cir. 1997) (noting that state certification is

1 generally appropriate when there is "no controlling precedent in the decisions of the Arizona
2 Supreme Court or in the Arizona Courts of Appeal."). However, the time for such a
3 procedural maneuver has long since passed. In sum, interlocutory review of this Court's July
4 1, 2008 and September 18, 2008 Orders cannot be justified under the circumstances of the
5 instant case. If Defendants wish to take an appeal from these previous rulings, they may still
6 do so, but only after the entry of final judgment.

7 **II.    Defendants' Motion for Summary Judgment**

8 There are three separate issues that must be resolved in Defendants' Motion for
9 Summary Judgment. First, the Court must determine whether Fred Rowe, Mrs. Rowe's
10 husband and guardian at litem, has standing to sue on his own behalf for the tort of bad faith.
11 Secondly, the Court must determine whether Defendants are entitled to summary judgment
12 on Plaintiffs' claims of breach of good faith, negligent misrepresentation and common law
13 and constructive fraud. The final issue is whether Plaintiffs' punitive damages claim should
14 be allowed to proceed to trial.

15 **A. Fred Rowe's Standing to Sue on His Own Behalf**

16 Defendants contend that under Fobes v. Blue Cross & Blue Shield of Ariz., 861 P.2d
17 692 (Ariz Ct. App. Div. 1, 1993), a spouse of an insured has no standing to maintain an
18 action against an insurer for breach of the duty of good faith and fair dealing in relation to
19 an insurance policy that was only issued to their spouse. After Defendants raised this
20 argument in their Motion for Summary Judgment, Plaintiffs chose not to respond to this
21 claim in their response brief. Instead, Plaintiffs filed a new Motion to certify this legal
22 question to the Arizona Supreme Court. Plaintiffs later withdrew this Motion on the grounds
23 that any stay in the proceedings would unnecessarily drag out the lawsuit. Despite the fact
24 that Plaintiffs have failed to directly address Defendants' argument in their summary
25 judgment briefing, the Court will incorporate claims made in the now withdrawn certification
26 Motion for the purpose of fully analyzing the issue of Mr. Rowe's standing.

27 It is Defendants position that under Arizona common law the tort of bad faith
28 contemplates a duty between only the insurance company and its insured, and does not

- 7 -

1 regulate the conduct of the insurance company towards third-parties who are strangers to the
2 contract. See Nahom v. Blue Cross & Blue Shield, 885 P.2d 1113, 1118 (Ariz Ct. App.
3 Div. 1, 1994) (explaining the court's holding in Fobes).   Plaintiffs, in their Motion for
4 certification, respond by arguing that in Gipson v. Kasey, 150 P.3d 228 (Ariz. 2007), the
5 Arizona Supreme Court expanded the concept of duty in tort cases. Plaintiffs' argument
6 relies on language from Gipson, which states that the "duty of care may arise from special
7 relationships based on contract, family relations, or conduct undertaken by the defendant,"
8 and that given the "historical evolution of the common law," "a special or direct relationship
9 . . . is not essential in order for there to be a duty of care." Id. at 232.  Plaintiff further relies
10 on a holding from the Montana Supreme Court, which recognized a rule permitting family
11 members of an insured to sue for the tort of bad faith even when not a party to the contract.
12 Tynes v. Bankers Life, Co., 730 P.2d 1115 (Mont. 1986).

13       The Court finds no merit in the Rowe's contention.  First, contrary to their assertion,
14 the Arizona Supreme Court's decision in Gipson was a narrow one, and the single quote that
15 Plaintiffs cite appears to have been pulled out of context from the larger holding.  A careful
16 reading of Gipson reveals that the case stands only for the proposition that foreseeability of
17 harm would no longer constitute an element of duty in Arizona state negligence law. Gipson,
18 150 P.3d at 231.  As such, the Arizona Supreme Court found that the proper place for a
19 foreseeabililty determination was in the element of proximate cause—since duty is typically
20 a question of law for the court and proximate cause a question of fact for the jury. Id. at 232.
21 To the extent Gipson addressed related aspects of the law of duty, it simply reaffirmed the
22 long understood and rather unremarkable common law principle that certain types of
23 relationships between the parties can give rise to a duty of care in a negligence action, i.e.
24 occupant of land-guest, tavern owner-patron, a familial relationship, a contract, voluntary
25 conduct undertaken by the defendant, a statute, etc. Id.  It is unclear how the portion of the
26 Gipson opinion that Plaintiffs quote can be read as an expansion of the concept of duty in
27 Arizona negligence law.  Secondly, nowhere did Gipson even mention the tort of bad faith.
28 Absent specific and compelling Arizona case law, this Court will not presume that duty for

negligence purposes and duty for bad faith coverage purposes are coextensive. Plaintiff has failed to demonstrate that the rule in Fobes has been eclipsed, and their reliance on Gipson to support this point is unavailing.

The Court additionally declines to follow the holding of the Montana Supreme Court in Tynes, which is a decision from an out of state jurisdiction and therefore not binding on the Court's determination. The ruling in Tynes also runs counter to Fobes, Nahon, and other Arizona cases dealing with the tort of bad faith, since Arizona law plainly holds that insurance companies do not owe a duty to non-parties for bad faith coverage claims. Fobes, 861 P.2d at. 694  ("Ever since the tort of bad faith was first recognized in Arizona . . . it has been consistently viewed as limited by the contractual relationship between the plaintiff and the defendant insurer.") (internal quotations omitted). If that rule is to be changed, it is up to the state courts to do so. Summary judgment on behalf of Defendants is therefore appropriate on Fred Rowe's tort claim for breach of the duty of good faith and fair dealing.

**B. Defendants' Motion for Summary Judgment as to the Tort of Bad Faith, Negligent Misrepresentation, Common Law and Constructive Fraud.**

### 1. Summary Judgment Standard

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of demonstrating the absence of a genuine issue of fact for trial. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).  See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574 (1986).  The evidence must be viewed in the light most

favorable to the nonmoving party. <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

### 2.     **Tort of Bad Faith**

An insurance contract is a distinct legal creation, and "implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." <u>Rawlings v. Apodaca</u>, 726 P.2d 565, 570 (Ariz. 1986).   Insurers owe duties to its insured that are fiduciary in nature, including the duties of equal consideration, fairness, and honesty.   <u>Zilisch v. State Farm Mut. Auto. Ins. Co.</u>, 995 P.2d 276, 279 (Ariz. 2000).   The tort of bad faith arises when the insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." <u>Noble v. National Am. Life Ins. Co.</u>, 624 P.2d 866, 868 (Ariz. 1981).  Arizona applies a two prong test to determine whether an insurer has acted in bad faith towards its insured: "(1) that the insurer acted unreasonably toward its insured, and (2) that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that . . . knowledge may be imputed to it." <u>Miel v. State Farm Mut. Auto. Ins. Co.</u>, 912 P.2d 1333 (Ariz. 1995).   Mere mistake or inadvertence are not sufficient to establish a claim for bad faith.   <u>Rawlings v. Apodaca</u>, 151 Ariz. 149, 157, 726 P.2d 565, 573 (1986).  Furthermore, if an insurance claim is fairly debatable, the insurer cannot be found to have acted unreasonably in denying the claim. <u>Lasma Corp.Monarch Ins. Co.</u>, 764 P.2d 1118, 1122 (Ariz. 1988).   While sometimes an issue of fact, there are certain instances where the issue of fair debatability or reasonableness is not a question deemed appropriate for determination by the jury. <u>Golden Rule Ins. Co. v. Montgomery</u>, 435 F. Supp.2d 980, 995 (D. Ariz. 2006).

In the instant case, whether Bankers Life acted unreasonably and with the requisite knowledge that its actions were taken in bad faith are both questions of fact for the jury to determine.  The Court will not resolve the threshold step of the bad faith inquiry at the summary judgment stage. <u>Butt See</u> <u>Golden Rule Ins. Co. v. Montgomery</u>, 435 F. Supp. 2d 980, 995 (D. Ariz. 2006).   Sending both issues to the jury seems particularly appropriate given the fact that the jury will also be resolving whether Mrs. Rowe is entitled to unlimited benefits under the policy.     Turning to the merits of Defendants' Summary Judgment

- 10 -

Motion, while the Court notes that it previously ruled that the parties contracted for long-term care and that the "Restoration of Benefits" clause is void, those rulings do not necessarily prove that Bankers Life acted unreasonably and with a culpable mental state, or otherwise committed the tort of bad faith. However, throughout the course of this litigation, the Court has been presented with enough evidence related to the termination of Mrs. Rowe's benefits and Bankers Life's performance under the contract to conclude that there exists a genuine issue of material fact on the question of bad faith, such that the related aspects of Mrs. Rowe's bad faith claims should proceed to the jury. Furthermore, with respect to Mrs. Rowe's other bad faith allegation, namely, that Bankers Life acted in bad faith by withholding benefits due to the Rowe's failure to contract with a licensed home care company, the Court finds a genuine issue of material fact exists on that portion of the bad faith claim as well. Plaintiffs have presented evidence on this issue in the form of testimony from Bob Daly, director of Visiting Angels, regarding the denial of the home care expense claim (PSOF ¶¶ 17-19.), deposition testimony from Bankers Life employees on the availability of home health care licensing information in Arizona, and evidence from other policy holders who encountered similar issues while covered by Bankers Life. (PSCSF ¶¶ 175-190.) When viewed in the light most favorable to the Rowes, who are the non-moving party, such evidence is sufficient to present a genuine issue of material fact.

### 3. Common Law and Constructive Fraud

Under Arizona law, there are two types of actionable civil fraud: common law and constructive fraud. Common law fraud occurs when a defendant evinces an actual intent to deceive, Haisch v. Allstate Ins. Co., 5 P.3d 940, 944 ( Ariz. Ct. App. 2000), while constructive fraud does not require an intent to deceive, but instead arises when a defendant breaches a legal or equitable duty. Dawson v. Withycombe, 163 P.3d 1034, 1057-58 (Ariz. Ct. App. 2007) (discussing constructive fraud).

To prevail on a common law fraud claim, the Rowes must prove the following elements: (1) a representation; (2) that was false; (3) material; (4) the speaker had knowledge of its falsity or ignorance of its truth; (5) the speaker intended that it should be acted upon

n/a

1 by the person and in the manner reasonably contemplated; (6) the listner was ignorant of its
2 falsity; (7) relied on its truth; (8) such reliance was justified; and (9) the listener suffered
3 consequent and proximate injury. See Enyart v. Transamerica Insurance Co., 985 P.2d 556,
4 562 (Ariz. Ct. App. 1998).

5       On the other hand, to prevail on a claim on constructive fraud, the Rowes must prove
6 these elements: (1) Defendants had a fiduciary or confidential relationship with Plaintiffs that
7 gave rise to a legal or equitable duty; (2) Defendants breached that duty; (3) the breach tends
8 to deceive others, violates public or private confidences, or injures public interests; and (4)
9 the breach induced detrimental and justifiable reliance. Dawson, 163 P.3d at 1057-58 (citing
10 Lasley v. Helms, 880 P.2d 1135, 1137 (Ariz. Ct. App. 1994), Assilzadeh v. Cal. Fed. Bank,
11 98 Cal.Rptr.2d 176, 184 (Cal. 2000), In re McDonnell's Estate, 179 P.2d 238, 241 (Ariz.
12 1947)). Most importantly, no showing of "intent to deceive or dishonesty of purpose" is
13 required. See Lasley, 880 P.2d at 1138.

14       Defendants argue that summary judgment should be granted on Plaintiffs' two fraud
15 claims because the evidence shows that the Rowes could not have justifiably relied on
16 Defendants' representations. To this end, Defendants point to the fact that Mrs. Rowe signed
17 an acknowledgment form which stated that she, as policy holder, understood that Bankers
18 Life would not be providing long-term care. Moreover, according to Defendants, Mr. Rowe
19 admitted in deposition testimony that he and his wife did not contact Bankers Life about
20 discrepancies in coverage once such discrepancies were discovered, nor did they cancel the
21 policy or request the return of premiums, as permitted by the terms of the contract. Plaintiffs
22 counter by arguing that Defendant Soller made oral representations, which described the
23 coverage as long-term care, and that Bankers Life presented them with a "Notice of
24 Applicant" form, which specified that they were applying for long-term care insurance.
25 Plaintiffs also allege that the evidence they have presented, which includes over 40 letters
26 and explanations of benefits and premium notices, all support an inference that they were
27 justified in relying on the representations made to them by Defendants. The Court will not
28 definitively resolve at summary judgment the question of whether the Rowes were justified

in relying on representations made Bankers Life or its agent, Falicia Soller; suffice it to say that the evidence presented creates a triable issue, such that a jury will make the ultimate determination.

In their reply brief Defendants contend for the first time that under Arizona law a person cannot recover for fraud based on representations of the terms of the contract when they have been provided ample opportunity to review the terms of that contract and have specifically assented thereto. Defendants cite Jones v. Chiado Corp., 670 P.2d 403, 405 (Ariz. Ct. App. 1983), to support this position. The Court finds Defendants' argument unavailing, noting that the Arizona Court of Appeals has questioned the continued vitality of the holding in Jones:

> There is nothing particularly attractive in the proposition that an insurer, or anyone else, may by misrepresentation induce a person to forego rights and then defend on the ground that the fraud is excused because the person defrauded should have known better. We are unwilling to endorse the idea that victimization of the ignorant has legal sanction. We believe that the action of the courts . . . in relieving persons of the plain terms of writings by reason of separate oral understandings and agreements also undercut those earlier rulings upholding writings induced by misrepresentations.
>
> Even if, however, the older cases are still applicable, we believe a jury could conclude the plaintiff had a right to rely on the adjuster's representations. The legal language of the release, while clear to lawyers and judges, may well have been impenetrable to this plaintiff. Faced with that barrage of words and clauses, some applicable to his situation and some not, plaintiff could be uncertain about its meaning and application to him. We see nothing unreasonable in asking the adjuster what that language meant and in relying on the answer given.

Lubin v. Johnson, 820 P.2d 328, 328-29 (Ariz. Ct. App. 1991); see also Lundy v. Airtouch Communs., Inc., 81 F. Supp. 2d 962, 969 (D. Ariz. 1999) (stating that "the continued validity of Jones has been expressly called into question by a subsequent decision of the Arizona Court of Appeals.").

In any event, the Court need not consider Defendants' position since it was first raised in their reply brief. Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir. 1990) (noting that legal arguments raised for the first time in the reply brief are deemed waived). Thus, even if the argument Defendants made in reliance Jones had legal merit, which it lacks, the Court could not appropriately consider it, since Plaintiffs did not have the opportunity to

1  respond. See United States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006); Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999).[1]

### 4. Negligent Misrepresentation

Arizona recognizes the tort of negligent representation as defined in the Restatement (Second) of Torts § 552(1) (1977). Haisch v. Allstate Ins. Co., 5 P.3d 940, 944 ( Ariz. Ct. App. 2000). To prevail on such a claim, the Rowes would have to prove that Defendants failed "to exercise reasonable care and competence in obtaining or communicating information and thereby, in the course of his business or employment,  provide[d] false information for the guidance of others in their business transactions, causing the recipients of the information to incur damages because they justifiably relied on the false information." PLM Tax Certificate Program 1991-92, L.P. v. Schweikert, 162 P.3d 1267, 1270 (Ariz. Ct. App. 2007).

Defendants contend that because Mrs. Rowe is not in a position to testify as to Ms. Soller's representations, due to the advanced stage of her illness, the Court must rely on the testimony of Mr. Rowe. Defendants argue that Mr. Rowe's uncontradicted deposition testimony reveals the couple could not have justifiably relied on Ms. Soller's statements because Mr. Rowe admitted that he and his wife read through the policy, understood that it was not for long-term care despite representations made by the Bankers Life agent, and then chose to unilaterally disregarded policy terms believing that the contract language did not apply to Mrs. Rowe's policy. Plaintiffs counter by arguing that Mr. Rowe actually stated in his deposition testimony that he and Mrs. Rowe read through the policy but did not understand it at the time, and had no idea that it contradicted what had been told to them by the Bankers Life agent. While the Court notes that Mr. Rowe's deposition testimony is not

---

[1]The same principle applies to the argument that Mr. Rowe's deposition testimony is inherently unreliable because of post-deposition alterations that were made to the transcript in clear violation of Fed. R. Civ. P. 30(e). Again, by raising this argument in their reply brief, Defendants have denied Plaintiffs the chance to respond, and the Court will therefore not consider such an argument. Eberle, 901 F.2d at 818.

- 14 -

1  a model of perfect clarity, at the summary judgment stage of the proceedings this Court must
2  review the evidence, including Mr. Rowe's deposition testimony, in the light most favorable
3  to the non-moving party.  See Devereaux, 263 F.3d at 1070.   Under this standard, there
4  exists a genuine issue of material fact such that a jury will determine whether the Rowe's
5  reliance was justified under the circumstances—both for the purposes of the fraud claims and
6  that of negligent misrepresentation.

### C. Punitive Damages

8   Under Arizona law punitive damages are awarded to punish a civil defendant and
9  deter similar conduct in the future.  Gurule v. Illinois Mut. Life & Casualty Co., 734 P.2d
10 85, 86 (Ariz. 1987). Punitive damages are only available when a plaintiff can prove, by clear
11 and convincing evidence, that the defendant acted with intent, knowledge, or with an
12 otherwise culpable state of mind.  Such a mental state has been frequently described as the
13 "evil mind."  Linthicum v. Nationwide Life Ins. Co., 723 P.2d 675, 680-81 (Ariz. 1986).  A
14 plaintiff can meet this standard by demonstrating that the defendant (1) acted with the intent
15 to injure; (2) consciously pursued a course of conduct knowing that it created a substantial
16 risk of significant harm to others; (3) was motivated by spite, actual malice, or intent to
17 defraud; or  (4) acted with conscious and deliberate disregard of the interests and rights of
18 others.  See Thompson v. Better-Bilt Aluminum Prod., 832 P.2d 203. 210-11 (Ariz. 1992);
19 Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz. 1986); Dawson v. Withycombe, 163 P.3d
20 1034, 1061-62 (Ariz. Ct. App. 2007).

21  Defendants contend that as a matter of law they cannot be held liable for punitive
22 damages, because in a bad faith action against an insurer, a mere finding of bad faith,
23 "without more, will not subject an insurer to an award of punitive damages."  Lange v. Penn
24 Mut. Life Ins. Co., 843 F.2d 1175, 1183 (9th Cir. 1988).  According to Defendants, even if
25 one were to assume *arguendo* that a jury could return a verdict in favor of Plaintiffs on the
26 bad faith claim, there is still no evidence—let alone clear and convincing evidence—that
27 Bankers Life or Falicia Soller acted with the requisite evil mind that would support the
28 imposition of punitive damages.  But Defendants' argument is incomplete in that it fails to

1  account for the fact that they are being sued for more than just the tort of bad faith.
2  Defendants also face claims of negligent misrepresentation, constructive fraud and actual
3  fraud. With respect to actual fraud, one of its essential elements requires a finding that the
4  defendant acted with an intent to deceive. Haisch, 5 P.3d at 944. An intent to deceive is
5  roughly equivalent to the requirement of an evil mind for punitive damages purposes. See
6  Farr v. Occidental Life Ins. Co., 699 P.2d 376, 383 (Ariz. Ct. App. 1984). Thus, when
7  supported by clear and convincing evidence, a finding by the jury that a defendant has
8  committed actual fraud is often, though not always, sufficient to support the recovery of
9  punitive damages. Id. (noting that "[f]raud will suffice" to award punitive damages); but see
10 Echols v. Beauty Built Homes, 647 P.2d 629, 632 (Ariz 1982) ("It does not follow that every
11 case of fraud will support punitive damages."). Because Plaintiffs have created a genuine
12 issue of material fact that would permit a reasonable jury to conclude, based on clear and
13 convincing evidence, that Defendants intended to deceive them, the question of punitive
14 damages should be left for the jury to resolve as well. See Thompson v. Better-Bilt
15 Aluminum Prod., 832 P.2d 203. 210-11 (Ariz. 1992). As the Arizona Supreme Court has
16 previously noted, that when ruling at the summary judgment stage on the availability of
17 certain remedies courts should be mindful that "credibility determinations, the weighing of
18 the evidence, and the drawing of legitimate inferences from the facts are jury functions, not
19 those of a judge." Id. As such, should the jury return a verdict which Defendants believe
20 is against the clear weight of the evidence produced at trial, this Court will take up the issue
21 of damages anew. See Fed. R. Civ. P. 50, 59.
22      **Accordingly**,
23      **IT IS HEREBY ORDERED** granting in part and denying in part Defendants' Motion
24 for Summary Judgment. (Dkt.#89.)
25      **IT IS FURTHER ORDERED** denying Plaintiffs' Motion to Reopen Discovery.
26 (Dkt.#133.)
27      **IT IS FURTHER ORDERED** denying Defendants' Motion to Certify the Court's
28 July 1, 2008 and September 18, 2008 Orders for Interlocutory Appeal. (Dkt.#146.)

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion to Expedite Ruling and Trial (Dkt.#137.) and Defendants' Motion to Strike Exhibit One to Plaintiffs' Motion for Expedited Trial. (Dkt.#142.).

**IT IS FURTHER ORDERED** setting this matter for a status hearing on December 22, 2008 at 4:30 p.m. to set a trial date.

DATED this 9th day of December, 2008.

_____
Mary H. Murguia
United States District Judge